# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| DONNA MCGLADE, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>HOFFMAN MEDIA, LLC,<br><br>             Defendant. | Case No. 2:22-cv-11698-TGB-APP<br><br>Hon. Terrence G. Berg<br>Magistrate Judge Anthony P. Patti |

## DEFENDANT HOFFMAN MEDIA, LLC'S MOTION TO DISMISS

For the reasons explained in the accompanying Brief in Support, which is incorporated herein, Defendant Hoffman Media, LLC ("Hoffman") respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' Amended Complaint for lack of standing or, alternatively, failure to state a claim. In accordance with Local Rule 7.1(a), counsel for Hoffman states that he conferred with counsel for Plaintiffs on October 6, 2022, explaining the basis for the motion and requesting concurrence in the relief requested in the motion. Counsel for Plaintiffs did not concur, rendering this motion necessary.

Date:  October 7, 2022                    Respectfully submitted,

By:/s/ Theodore W. Seitz
    Lisa A. Brown (P67208)
    Theodore W. Seitz (P60320)
    Kyle M. Asher (P80359)
    DYKEMA GOSSETT PLLC
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6800
    lbrown@dykema.com

    *Attorneys for Hoffman Media, LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Theodore W. Seitz*

Theodore W. Seitz (P60320)

*Attorney for Hoffman Media, LLC*

3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| DONNA MCGLADE, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-11698-TGB-APP |
| Plaintiff, | Hon. Terrence G. Berg<br>Magistrate Judge Anthony P. Patti |
| v. | |
| HOFFMAN MEDIA, LLC, | |
| Defendant. | |

## DEFENDANT HOFFMAN MEDIA, LLC'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 3

I.   STATUTORY BACKGROUND ..................................................... 3

    A. The PPPA is Enacted to Codify Claims for Invasion of Privacy. ............ 3

    B. A Wave of Lawsuits is Filed Under the 1989 Version of the PPPA, and the Legislature Responds in 2016 by Eliminating Statutory Damages. ... 4

    C. A Second Wave of Lawsuits is Filed Arguing That a Six-Year Limitations Period Applies. ...................................................... 5

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

    A. Plaintiffs File a Class Action Complaint Alleging They Subscribed to *Southern Home* Magazine Before July 31, 2016, and their Private Reading Information Was Disclosed. ....................................... 6

    B. Hoffman Submits a Declaration Showing It Did Not Offer Subscriptions to *Southern Home* Before July 31, 2016 and Has No Record of Plaintiffs Ever Subscribing to Any Hoffman Magazine. ......................... 7

LEGAL STANDARD ........................................................................... 9

I.   FACTUAL ATTACKS ON SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1). .............................................................. 9

II.   MOTIONS TO DISMISS UNDER RULE 12(B)(6). ............................ 10

ARGUMENT .................................................................................. 11

I.   PLAINTIFFS LACK ARTICLE III STANDING. ............................... 11

II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. .......................................................... 14

    A. Claims Based On Injuries To Persons Are Subject To Mich. Comp. Laws § 600.5805(2)'s Three-Year Statute Of Limitations ....................... 14

i

1. The "Injury to a Person" Standard Is Broadly Construed.........15

2. Harms to Privacy Interests Are Personal Injuries That Have Been Traditionally Recognized in Tort, And Michigan Courts Have Routinely Applied Mich. Comp. Laws § 600.5805(2)'s Limitations Period To These Claims. ......................................18

B. Claims Under The PPPA Allege A Personal Injury And Have A Common Law Analogue To Traditional Tort Claims; Mich. Comp. Laws § 600.5805(2)'s Limitations Period Therefore Applies............................ 18

C. Plaintiffs' Reliance On Mich. Comp. Laws § 600.5813 Is Misplaced... 21

D. The Opinions Applying a Six-Year Limitations Period are Erroneous.. 22

CONCLUSION .................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. BioCare Inc. v. Howard & Howard Attys. PLLC.*,
702 F. App'x 416 (6th Cir. 2017) ..............................................................9

*Arent v. Hatch*,
349 N.W.2d 536 (Mich. Ct. App. 1984) ..................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................10

*Black v. Crowe, Paradis, & Albren, LLC*,
No. 5:14-187, 2014 U.S. Dist. LEXIS 147524 (W.D. Ky. Oct. 15, 2014)..............13

*Blue Cross & Blue Shield of Mich.* v. *Folkema*,
174 Mich. App. 476 (1988)........................................................................16

*Boelter v. Advance Mag. Publishers, Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ......................................................19

*Consol. Rail Corp. v. Yashinsky*,
170 F.3d 591 (6th Cir. 1999) ....................................................................15

*Corbin v. Blankenburg*,
39 F.3d 650 (6th Cir. 1994) ......................................................................13

*Coulter-Owens* v. *Time Inc.*,
695 F. App'x 117 (6th Cir. 2017) ............................................................20

*Davis v. Detroit Pub. Sch. Cmty. Dist.*,
835 F. App'x 18 (6th Cir. 2020) ...............................................................11

*Derderian v. Genesys Health Care Sys.*,
689 N.W.2d 145 (Mich. Ct. App. 2004) ..................................................18

iii

*DiPonio Construction Co. v. Rosati Masonry Co.*,
631 N.W.2d 59 (Mich. Ct. App. 2001) ...................................................................23

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004) .................................................................................9

*Garden City Osteopathic Hosp. v. HBE Corp.*,
55 F.3d 1126 (6th Cir. 1995) ................................................................................16

*Garg* v. *Macomb Cty. Cmty. Mental Health Servs.*,
696 N.W.2d 646 (Mich. 2005) ..............................................................................17

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) ................................................................................10

*Glennborough Homeowners Ass'n v. United States Postal Serv.*,
21 F.4th 410 (6th Cir. 2021) .................................................................................13

*Green* v. *Lansing Automakers Fed. Credit Union,*
No. 342373, 2019 Mich. App. LEXIS 4607
(Mich. Ct. App. Aug. 13, 2019) ....................................................................... 17, 18

*Grzywa, Inc.* v. *Meakin*,
No. 210604, 2000 Mich. App. LEXIS 2363 (Mich. Ct. App. May 5, 2000) ..........16

*Halaburda v. Bauer Pub. Co.*,
No. 12-cv-12831, 2013 U.S. Dist. LEXIS 109954 (E.D. Mich. Aug. 5, 2013) ......20

*Hall v. Farm Journal, Inc.*,
No. 2:21-cv-11811 (E.D. Mich.)....................................................................... 14, 22

*Herrin v. Dunham*,
481 F. Supp. 2d 854 (E.D. Mich. 2007)................................................................15

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
__ F.4th __, 2022 U.S. App. LEXIS 25233 (11th Cir. 2022)................................13

*In re: Packaged Ice Antitrust Litig.*,
No. 08-MDL-1952, 2011 U.S. Dist. LEXIS 150426
(E.D. Mich. Dec. 12, 2011)...................................................................................13

iv

*Krassick v. Archaeological Inst. of Am.*,
No. 2:21-cv-180, 2022 U.S. Dist. LEXIS 103417
(W.D. Mich. June 9, 2022) .............................................................................. 14, 22

*Krum* v. *Sheppard*,
255 F. Supp. 994 (W.D. Mich. 1966) ...................................................................16

*Local 1064, RWDSU AFL-CIO v. Ernst & Young*,
535 N.W.2d 187 (Mich. 1995)...................................................................... 15, 16, 22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...............................................................................................11

*Magee* v. *Daimler Chrysler Corp.*,
693 N.W.2d 166 (Mich. 2005) ...............................................................................17

*Markham* v. *Nat'l Geographic Partners, LLC*,
No. 1:19-cv-00232 (W.D. Mich.) ............................................................................1

*Marks* v. *Hulstrom*,
No. 294453, 2010 Mich. App. LEXIS 998 (Mich. Ct. App. May 27, 2010) ..........17

*McCree v. Cont'l Mgmt., LLC*,
No. 351171, 2021 Mich. App. LEXIS 1784 (Mich. Ct. App. Mar. 18, 2021) ........17

*Mcintyre v. Ogemaw Cty. Bd. of Comm'rs*,
No. 15-cv-12214, 2016 U.S. Dist. LEXIS 125282
(E.D. Mich. Sept. 15, 2016) ...................................................................................18

*Moeller v. Am. Media, Inc.*,
235 F. Supp. 3d 868 (E.D. Mich. 2017)............................................................ 19, 20

*Nat'l Sand, Inc. v. Nagel Constr., Inc.*,
451 N.W.2d 618 (Mich. Ct. App. 1990) .................................................................16

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ...............................................................................................13

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
878 F.3d 530 (6th Cir. 2017) .................................................................................22

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017)...................................................................19

*Perry* v. *Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ...............................................................................3

*Rentola* v. *Dow Jones & Co., Inc.*,
No. 4:20-cv-11589-SDD-EAS (E.D. Mich.) ............................................................1

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996) ....................................................................................9

*Smith v. Robbins & Meyers, Inc.*,
No. 3:12-cv-281, 2014 U.S. Dist. LEXIS 132727
(S.D. Ohio Sept. 22, 2014)......................................................................................13

*Spokeo, Inc.* v. *Robins*,
578 U.S. 330 (2016)...................................................................................................3

*Stringer* v. *Bd. of Trustees of Edward W. Sparrow Hosp.*,
233 N.W.2d 698 (Mich. Ct. App. 1975) ........................................................... 16, 24

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989).................................................................................................19

*Zurich Ins. Co. v. Logitrans, Inc.*,
297 F.3d 528 (6th Cir. 2002) ..................................................................................13

**Statutes**

Mich. Comp. Laws § 445.1712 (1989)......................................................................4

Mich. Comp. Laws § 445.1715(2) ............................................................................ 5

Mich. Comp. Laws § 600.5805........................................................... v, 15, 23, 24

Mich. Comp. Laws § 600.5805(10).........................................................................17

Mich. Comp. Laws § 600.5813........................................................................ 21, 23

**Other Authorities**

*Privacy: Sales, Rentals of Videos, etc.*,
House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 ........................3

Video and Library Privacy Protection Act,
18 U.S.C. § 2710..........................................................................................................3

**Rules**

Federal Rules of Civil Procedure 12(b)(1) ..................................................................8

Federal Rules of Civil Procedure 12(b)(6) ..................................................................8

Federal Rules of Civil Procedure 56...........................................................................9

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Plaintiffs allege that they were subscribers to Hoffman Media, LLC publication *Southern Home* magazine before July 31, 2016, and that Hoffman Media sold, rented, exchanged, or otherwise disclosed Plaintiffs' Personal Reading Information obtained through those subscriptions in violation of Michigan's Preservation of Personal Privacy Act.  Hoffman Media has, however, produced a Declaration showing it did not offer subscriptions to *Southern Home* in Michigan before July 31, 2016, and that "Hoffman's records show no subscriber, for any of its publications, named Donna McGlade, Mary Hoemke, or Carla Keaner, either presently or at any time prior to July 31, 2016 (whether as residents of Michigan or otherwise)."  The issues presented are:

1.   Do Plaintiffs lack Article III standing because any injury in fact was not traceable to Hoffman's conduct?

2.   Even if Plaintiffs had standing, should this Court apply a three-year limitations period to Plaintiffs' claims under the Preservation of Personal Privacy Act?

Hoffman Answers, to Each Question: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Mich. Comp. Laws § 445.1715(2).

Mich. Comp. Laws § 600.5805(2)

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)

*Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 341 (2016)

## **INTRODUCTION**

This case is one of nearly 100 class action lawsuits filed by the same plaintiff's counsel, which seek multi-million-dollar judgments for the alleged disclosure of customer identifying information under a version of Michigan's Preservation of Personal Privacy Act ("PPPA") that has not been in effect since July 2016.  In an earlier round of litigation—filed just a couple of years ago—the same counsel plainly asserted in court filings that "[c]laims under the [PPPA] are subject to a 'three-year statute of limitations.'"[1]   Despite that recognition, the Amended Complaint here takes issue with alleged disclosures from a "pre-July 30, 2016 time period" and, in direct contrast to counsel's prior statements, now asserts that "[t]he statutory period for this action is six years."  (Am. Compl. ¶¶ 1, 1 n.1, ECF No.10.)

The reason for this about-face is simple.  Before July 30, 2016, the PPPA "allow[ed] recovery of actual damages or $5,000, whichever is greater."  In putative class actions like this—where class members can number in the thousands—that statutory damages figure can bankrupt businesses and provide a boon to class action counsel even when the plaintiff suffered no actual damages.  To remedy this,

---

[1] *Rentola* v. *Dow Jones & Co., Inc.*, No. 4:20-cv-11589-SDD-EAS (E.D. Mich.), Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 12 at 2 (citations omitted); *see also Markham* v. *Nat'l Geographic Partners, LLC*, No. 1:19-cv-00232 (W.D. Mich.), Pl.'s Resp. to Def.'s Pre-Motion Conference Req., ECF No. 26 at 1-2 (arguing that claims brought more than years ago were timely due to tolling instead of arguing that a longer of statute of limitations period applied).

1

effective July 31, 2016, Michigan's Legislature removed the statutory damages floor.  Now, only customers "who suffer[] actual damages" can recover.

Plaintiffs do not allege any actual damages that fit within the current version of the PPPA.  Instead, they ask for the statutory damages Michigan's Legislature expressly eliminated more than half-a-decade ago.  The only way to pursue this relief is to raise claims based on disclosures that allegedly occurred before the PPPA's amendment and, contrary to their counsel's prior position, argue the claims are timely because a six-year statute of limitations applies.  This argument should be rejected, and the Amended Complaint should be dismissed, for two primary reasons.

*First*, contrary to the Amended Complaint's assertions, Hoffman Media, LLC ("Hoffman") did not disclose any of Plaintiffs' personal information to third parties. During the "pre-July 31, 2016" time period Plaintiffs seek relief under, Hoffman did not offer subscriptions of the publication at issue to Michigan residents, and therefore had no personal information of Plaintiffs to disclose.  Plaintiffs, therefore, lack Article III standing because they did not suffer an injury-in-fact traceable to Hoffman's conduct.  *Second*, even if Plaintiffs had standing, their attorneys were right the first time: PPPA claims "are subject to a 'three-year statute of limitations.'" Plaintiffs' claims—brought nearly six years after the fact (or, with respect to two plaintiffs, more than six years after the fact), are barred by the applicable statute of limitations.

2

# BACKGROUND

## I.   Statutory Background.

### A.   The PPPA is Enacted to Codify Claims for Invasion of Privacy.

The PPPA was drafted after "a Washington weekly obtained and published a list of videotapes rented under" Judge Robert Bork's "wife's account" when Judge Bork's Supreme Court confirmation was pending.  House Legislative Analysis of H.B. No. 5331, *Privacy: Sales, Rentals of Videos, etc.*, Jan. 20, 1989 (Ex. B to Am. Compl., ECF No. 10-3, PageID.577.)

This incident prompted federal legislation "to protect the privacy of those who rent or buy videotapes" through the federal Video and Library Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), which reflected an attempt to codify the common law right to privacy.  *See, e.g.*, *Perry* v. *Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) ("[T]he VPPA's creation of a cause of action for this type of an invasion of privacy 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'") (citing *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 341 (2016)).

Shortly after this federal legislation was drafted, Michigan's legislature codified these rights at the state level.  As the PPPA's legislative history states, because "[m]any in Michigan believe[d]" such information was "nobody's business but one's own," Michigan's legislature also "suggest[ed] the enactment of a statute

3

to explicitly protect a consumer's privacy[.]"  House Legislative Analysis of H.B.

No. 5331 (ECF No. 10-3, PageID.557.)

The 1989 version of the statute—which Plaintiffs base their claims on—

provided that, subject to certain exceptions, any person:

> [E]ngaged in the business of selling at retail, renting, or lending
> books or other written materials, sound recordings, or video
> recordings shall not disclose to any person, other than the
> customer, a record or information concerning the purchase, lease,
> rental, or borrowing of those materials by a customer that indicates
> the identity of the customer.

Mich. Comp. Laws § 445.1712 (1989).  As originally enacted, the PPPA did not

impose civil penalties through a private cause of action.  *See* 1988 Public Act 378.

In 1989, however, the PPPA was amended to allow recovery of "[a]ctual damages

. . . or $5,000.00, whichever is greater."  1989 Public Act 206 (codified at Mich.

Comp. Laws § 445.1715(2)(a) until amended by 2016 Public Act 92.)

**B.    A Wave of Lawsuits is Filed Under the 1989 Version of the PPPA, and the Legislature Responds in 2016 by Eliminating Statutory Damages.**

Beginning around 2012, plaintiffs began filing putative class action lawsuits

against media companies under the PPPA for the alleged disclosure of personal

reading information.  Given the $5,000.00 in statutory damages available under the

1989 version of the PPPA, the potential exposure for these lawsuits was massive and

had the potential to bankrupt media outlets.  Thus, "[m]any of the largest media

4

companies in the world . . . settled PPPA claims for hefty sums, including: Conde Nast Publications Inc. ($13.75 million); Time Inc. ($7 million); Hearst Corp. ($50 million); TV Guide ($1.7 million); Consumers Union, which publishes Consumer Reports ($16.375 million); and Playboy Enterprises Inc. ($3.85 million)."[2]

To remedy this, effective July 31, 2016, Michigan Senate Bill 490 removed the statutory damages floor from the PPPA. Now, only customers "who suffer[] actual damages" can sue, and they can only recover "the following: (a) The customer's actual damages, including damages for emotional distress" and "(b) Reasonable costs and attorney fees." Mich. Comp. Laws § 445.1715(2).

### C.   A Second Wave of Lawsuits is Filed Arguing That a Six-Year Limitations Period Applies.

During this first wave of litigation, it was widely understood—even by the same counsel who represent Plaintiffs here—that "[c]laims under the [PPPA] are subject to a 'three-year statute of limitations.'"[3] Thus, after July 31, 2019—three years after the PPPA's amendment eliminating statutory damages—there was a lull in class actions brought under the PPPA.

---

[2] Sheridan et al., *It's All About that [Data]base – More Unexpected Trouble for Companies that Share Customer Information*, STEPTOE (Dec. 8, 2021), available at https://www.steptoe.com/en/news-publications/its-all-about-that-databasemore-unexpected-trouble-for-companies-that-share-customer-information.html.

[3] *Rentola*, Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 12 at 2 (citations omitted).

Toward the end of 2021, however, counsel began arguing that a six-year limitations period applies, filing a second wave of lawsuits. With a six-year limitations period, the argument goes, PPPA claims for statutory damages that accrued while the prior version of the statute was in place (before July 31, 2016) could still be timely-raised until July 31, 2022. (Am. Compl. at n.2, ECF No. 10, PageID.545 ("Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case.").)

## II.     Factual and Procedural Background.

### A.     Plaintiffs File a Class Action Complaint Alleging They Subscribed to *Southern Home* Magazine Before July 31, 2016, and their Private Reading Information Was Disclosed.

As part of this second wave of lawsuits, the same attorneys have filed nearly 100 putative class action lawsuits against every conceivable media company doing business in Michigan – ranging from the *New York Times* to the American Bar Association to the Biblical Archaeology Society. In a scramble to sue these organizations before the limitations period expires, the plaintiffs have taken a shotgun approach resulting in several cases being dismissed before service was ever effected, and at least one case being dismissed for lack of jurisdiction.

This is one of those cases. Plaintiff Donna McGlade filed a complaint one week before the alleged six-year limitations period was set to expire. (Compl., ECF

No. 1.)  The Complaint was then amended (after the six-year period had lapsed) to add Mary Hoemke and Carla Keaner as named Plaintiffs.  (Am. Compl., ECF No. 10.)  The Amended Complaint alleges that, "prior to July 31, 2016," each Plaintiff purchased a "subscription to *Southern Home* magazine directly from Hoffman."  (*Id.* ¶¶ 9-11.)  It further alleges that, after purchasing *Southern Home* subscriptions, "and during the relevant pre-July 31, 2016 time period, Hoffman disclosed, without the requisite consent or prior notice," the Plaintiffs' "Private Reading Information to data aggregators, data appenders, and/or data cooperatives" and "rented or exchanged mailing lists containing" this information "to third parties seeking to contact Hoffman subscribers."  (*Id.*)

To support these allegations, Plaintiffs point to a mailing list they say "contains the Private Reading Information of 264,571 of Hoffman's active U.S. subscribers."  (*Id.* ¶ 2, PageID.545; *see also* Mailing List, ECF No. 10-1.)  The mailing list does not identify who the alleged subscribers were, when the alleged subscribers purchased their subscriptions, or when Hoffman allegedly sold the subscribers' Private Reading Information.  (*See id.*)

### B.  Hoffman Submits a Declaration Showing It Did Not Offer Subscriptions to *Southern Home* Before July 31, 2016 and Has No Record of Plaintiffs Ever Subscribing to Any Hoffman Magazine.

That is not surprising.  Although the Amended Complaint alleges that Plaintiffs purchased subscriptions to *Southern Home* at an unidentified time before

July 31, 2016, "[w]hile residing in, a citizen of, and present in Michigan" (*id.* ¶¶ 9-11), as the Declaration of Hoffman's Executive Vice President of Operations and Manufacturing makes clear, "there was no Hoffman list of Michigan subscribers to *Southern Home* prior to July 31, 2016." (Baugh Decl. ¶ 3.[4])  "During that time period, *Southern Home* was sold in the State of Michigan only at the newsstand and not by subscription." (*Id.*)  If Plaintiffs had purchased *Southern Home* at a newsstand, "Hoffman would have no knowledge, nor any personal information concerning" Plaintiffs or their purchases. (*Id.*)

In addition, while Plaintiffs vaguely imply they may have subscribed to other Hoffman magazines, the Declaration makes clear that "Hoffman's records show no subscriber, for any of its publications, named Donna McGlade, Mary Hoemke, or Carla Keaner, either presently or at any time prior to July 31, 2016 (whether as residents of Michigan or otherwise)." (Baugh Decl. ¶ 4.)  Lacking any information relating to Plaintiffs whatsoever, it necessarily follows that "Hoffman did not sell, rent or exchange the names or information of Donna McGlade, Mary Hoemke or Carla Keaner at any time prior to August 1, 2016." (*Id.*)

Hoffman now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[4] As set forth below, the Declaration can be considered at this stage because Hoffman is raising a factual attack on Plaintiffs' standing under Rule 12(b)(1).

## LEGAL STANDARDS

### I.    Factual Attacks on Subject Matter Jurisdiction Under Rule 12(b)(1).

Hoffman's arguments for lack of Article III standing implicate this Court's subject matter jurisdiction and are "properly decided under [Federal Rule of Civil Procedure] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Attys. PLLC.*, 702 F. App'x 416, 419 (6th Cir. 2017).  "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true," or it can "attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

When, as here, there is a factual attack on the Court's jurisdiction, the Court "may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. Pro. 56."  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Because the court's "very power to hear the case" is at issue, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*  "In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.*

It is the plaintiff's burden to prove that jurisdiction exists.  *Id.*  And in determining whether the plaintiff has met this burden in response to a factual attack,

the court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).[5]

## II.   Motions to Dismiss Under Rule 12(b)(6).

Hoffman's remaining arguments for dismissal are brought under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Two "working principles" underlie the Rule's pleading requirements. *Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. This "plausibility" requirement "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (citations omitted).

---

[5] As *Gentek* goes on to explain, "an attack on subject-matter jurisdiction" that "also implicates an element of the cause of action" can be considered after discovery closes. 491 F.3d at 330. But there are "exceptions to this rule" such as when "the disputed question determines whether the plaintiff is a proper party." *Id.* at 330-31.

## ARGUMENT

## I.    Plaintiffs Lack Article III Standing.

"Article III standing is a threshold question that [courts] must address before proceeding on the merits." *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22-23 (6th Cir. 2020).  To answer that threshold question, courts look to whether: (1) the plaintiff has "suffered an 'injury in fact'" that is "concrete and particularized"; (2) the injury is "traceable . . . to the challenged action of the defendant"; and (3) the injury is redressable by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These requirements are the same whether the plaintiff's complaint is brought on an individual or class-wide basis. "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 136 S. Ct. at 1547 n.6.

Plaintiffs' Amended Complaint fails at this threshold step, as they cannot meet their burden of showing an "injury in fact" that is "fairly traceable" to Hoffman.  The injuries Plaintiffs point to center on alleged invasions of privacy that occurred when their Personal Reading Information was sold to third parties without their consent. (Am. Compl. ¶ 74 ("By disclosing Plaintiffs' and the Class's Private Reading

11

Information during the relevant pre-July 31, 2016 time period, Hoffman violated Plaintiffs' . . . statutorily protected right to privacy in their reading habits.").)

As Hoffman has explained, however, "there was no Hoffman list of Michigan subscribers to *Southern Home* prior to July 31, 2016." (Baugh Decl. ¶ 3.) The only Hoffman publication Plaintiffs affirmatively say they subscribed to was never available to purchase through a subscription before July 31, 2016. "During that time period, *Southern Home* was sold in the State of Michigan only at the newsstand and not by subscription." (*Id.*) Because Hoffman never obtained any information of Plaintiffs through a non-existent *Southern Home* subscription, Hoffman also never sold, rented, exchanged, or disclosed any such information to others. (*Id.*) And to the extent Plaintiffs attempt to change course and allege they subscribed to other Hoffman publications before July 31, 2016, they have failed to plead sufficient facts in support of such allegations. Nor could they, as "Hoffman's records show no subscriber, *for any of its publications*, named Donna McGlade, Mary Hoemke, or Carla Keaner, either presently or at any time prior to July 31, 2016 (whether as residents of Michigan or otherwise)." (Baugh Decl. ¶ 4 (emphasis added).)

Put simply, "Hoffman did not sell, rent or exchange the names or information of Donna McGlade, Mary Hoemke or Carla Keaner at any time prior to August 1, 2016." (*Id.*) Thus, Plaintiffs did not suffer any injury in fact that is traceable to Hoffman's conduct. Plaintiffs therefore lack Article III standing, and the case should

be dismissed in its entirety. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also, e.g.*, *Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410 (6th Cir. 2021) (affirming dismissal for lack of standing); *Hunstein v. Preferred Collection & Mgmt. Servs.*, __ F.4th __, 2022 U.S. App. LEXIS 25233 (11th Cir. 2022) (en banc) (same).

As a final matter, Hoffman notes that attempting to cure the standing defects through amendment would be improper, as courts within the Sixth Circuit have frequently found that a new case must be opened to do so. *Black v. Crowe, Paradis, & Albren, LLC*, No. 5:14-187, 2014 U.S. Dist. LEXIS 147524, at *2 (W.D. Ky. Oct. 15, 2014) ("If a plaintiff does not have standing to sue, then the plaintiff also lacks standing to amend its original complaint to add a party that meets the standing requirements . . .") (citation omitted); *Smith v. Robbins & Meyers, Inc.*, No. 3:12-cv-281, 2014 U.S. Dist. LEXIS 132727, at *9 (S.D. Ohio Sept. 22, 2014) ("This entire action must be dismissed if he lacked Article III standing because jurisdiction never attached and cannot be cured by amendment or otherwise.") (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002)); *In re: Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 U.S. Dist. LEXIS 150426, at *44 (E.D. Mich. Dec. 12, 2011) ("They cannot cure this lack of standing by adding plaintiffs who, unlike

13

the original IP Plaintiffs, may have standing to assert such claims. Simply put, these IP Plaintiffs were never entitled to bring claims under the laws of states in which they suffered no injury and cannot be permitted to cure that deficiency by adding new plaintiffs who may have.").

## II.  **Plaintiffs' Claims Are Barred By The Statute Of Limitations.**

If this Court does reach the merits, it should dismiss Plaintiffs' claims as time-barred. Plaintiffs' claims take issue with data disclosures that allegedly occurred during a "pre-July 30, 2016 time period." (Am. Compl. ¶ 1.) These claims, which in some cases accrued nearly six years before Plaintiffs filed their Complaint, and in other cases occurred more than six years after the Amended Complaint was filed, are barred by Mich. Comp. Laws § 600.5805(2)'s three-year statute of limitations.[6]

### A.  **Claims Based On Injuries To Persons Are Subject To Mich. Comp. Laws § 600.5805(2)'s Three-Year Statute Of Limitations**

Because Plaintiffs' PPPA claim invokes this Court's diversity jurisdiction, the Court looks to Michigan law to determine the applicable statute of limitations.

---

[6] As explained in greater detail below, Hoffman acknowledges that, on several occasions, courts have agreed with Plaintiffs' position that a six-year limitations period applies. *See Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 U.S. Dist. LEXIS 103417 (W.D. Mich. June 9, 2022); *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2022 U.S. Dist. LEXIS 27591 (E.D. Mich. Feb. 15, 2022); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811 (E.D. Mich.). These decisions are non-binding and, for the reasons explained in this brief, Hoffman respectfully asserts that they are erroneous. To the extent this Court sides with these other opinions, Hoffman preserves this argument for purposes of appeal.

*Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594 (6th Cir. 1999).

Mich. Comp. Laws § 600.5805 establishes Michigan's statute of limitations for *all* injuries to persons or property. *Herrin v. Dunham*, 481 F. Supp. 2d 854, 857 (E.D. Mich. 2007). Under that statute, "[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless . . . the action is commenced within the periods of time prescribed by this section." *Id.* § 600.5805(1). "Except as otherwise provided" under section 5805, "the period of limitations is 3 years after the time of the death or injury *for all actions to recover damages* for the death of a person or *for injury to a person or property*." *Id.* § 600.5805(2) (emphasis added).

1.   The "Injury to a Person" Standard Is Broadly Construed.

Thus, the operative question is what qualifies as an "injury to a person." At the outset, Michigan courts have made clear that, as used under § 600.5805(2), the term "injury to a person" should be broadly interpreted, and is not confined to any one type of redress sought. *See Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189 (Mich. 1995) ("§ 5805 prescribes the limitation periods for traditional common-law torts, regardless of whether the damages sought are for pecuniary or physical injury"). Courts "take[] an expansive view of what constitutes 'injuries to persons,'" and define the term as "including 'invasions of rights that inhere in man as a rational being.'" *Nat'l Sand, Inc. v. Nagel Constr., Inc.*, 451

15

N.W.2d 618, 621–22 (Mich. Ct. App. 1990).  This definition "has a broader meaning than physical injuries and includes such things as . . . the deprivation of civil rights." *Id.* (citing *Krum* v. *Sheppard*, 255 F. Supp. 994, 999 (W.D. Mich. 1966)).

To determine whether a specific claim falls under this broadly-interpreted standard, courts look to "the nature of the interest allegedly harmed."  *Grzywa, Inc.* v. *Meakin*, No. 210604, 2000 Mich. App. LEXIS 2363, at \*4 (Mich. Ct. App. May 5, 2000) (citation omitted); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1132-1133 (6th Cir. 1995) ("[T]he Michigan Supreme Court will examine the 'nature and origin' of a claim to determine the applicable limitations period.").  In doing so, they "look beyond procedural labels to see exactly what a party's complaint is before deciding whether it should be barred."  *Stringer* v. *Bd. of Trustees of Edward W. Sparrow Hosp.*, 233 N.W.2d 698, 700 (Mich. Ct. App. 1975).

Courts have found that claims seeking to vindicate a harm or interest that has been traditionally recognized in tort fall under this broad definition of "injury to a person" and, therefore, § 600.5805(2)'s three-year statute of limitations applies. *Nagel*, 451 N.W.2d at 621-22 (noting that the standard sweeps in "'invasions of rights that inhere in man as a rational being'"); *Local 1064*, 535 N.W.2d at 189 ("§ 5805 prescribes the limitation periods for traditional common-law torts . . .").

Courts have also found that this three-year limitations period applies both to statutory and common law claims that involve an injury to a person. *See Stringer*,

233 N.W.2d at 700 (courts "look beyond procedural labels" when deciding which limitations period applies).  For instance, less than a year ago, the Michigan Court of Appeals held that the three-year limitations period under § 600.5805(2) applied to statutory claims under the Truth in Renting Act and the Housing Law of Michigan because those statutes protect "rights imposed upon defendant by law, as opposed to a contractually consented-to-duty."  *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 Mich. App. LEXIS 1784, at *17 (Mich. Ct. App. Mar. 18, 2021); s*ee also, e.g.*, *Green* v. *Lansing Automakers Fed. Credit Union,* No. 342373, 2019 Mich. App. LEXIS 4607, at *12 (Mich. Ct. App. Aug. 13, 2019) (claim under Michigan's Elliott-Larsen Civil Rights Act was subject to three-year statute of limitations applying to "all actions to recover damages for the death of a person, or for injury to a person or property"); *Garg* v. *Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005) ("[A] person must file a claim under the Civil Rights Act within three years of the date his or her cause of action accrues, as required by § 5805(10)."); *Magee* v. *Daimler Chrysler Corp.*, 693 N.W.2d 166, 168 (Mich. 2005) (same); *Marks* v. *Hulstrom*, No. 294453, 2010 Mich. App. LEXIS 998, at *3 (Mich. Ct. App. May 27, 2010) (applying § 600.5805(2)'s predecessor provision to statutory nuisance claim under Mich. Comp. Laws § 600.2940(1)).[7]

---

[7] At the time these cases were filed, Mich. Comp. Laws § 600.5805(10) was the operative provision for actions "to recover damages for the death of a person, or for injury to a person or property."  *See* Mich. Public Act No. 715 of 2002 (effective

2.     Harms to Privacy Interests Are Personal Injuries That Have Been Traditionally Recognized in Tort, And Michigan Courts Have Routinely Applied Mich. Comp. Laws § 600.5805(2)'s Limitations Period To These Claims.

Consistent with the foregoing principles, claims alleging the invasion of a privacy interest seek compensation for a "personal injury" and are subject to the three-year statute of limitations.  Indeed, Michigan courts have repeatedly applied the three-year limitations period to these cases.  *See Green*, 2019 Mich. App. LEXIS 4607, at *15-16 (invasion of privacy claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159 (Mich. Ct. App. 2004) (false-light invasion of privacy claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (invasion of privacy claim); *Mcintyre v. Ogemaw Cty. Bd. of Comm'rs*, No. 15-cv-12214, 2016 U.S. Dist. LEXIS 125282, at *10 (E.D. Mich. Sept. 15, 2016) (common law privacy claim).

**B.    Claims Under The PPPA Allege A Personal Injury And Have A Common Law Analogue To Traditional Tort Claims; Mich. Comp. Laws § 600.5805(2)'s Limitations Period Therefore Applies.**

A claim for violation of the PPPA alleges a personal injury—a violation of a personal privacy interest in information about one's reading and video rental habits. That statute codified a claim for a violation of a traditional privacy right—that of controlling dissemination of information about oneself.  "[B]oth the common law

---

March 31, 2003); Mich. Public Act No. 582 of 2012 (effective January 2, 2013). The Legislature "amended MCL 600.5805, designating subpart (10) now as subpart (2) . . . effective June 12, 2018."  *Green*, 2019 Mich. App. LEXIS 4607, at *12 n.1.

and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989); *see also Ward v. Nat'l Patient Account Servs.*, 9 F.4th 357, 362 (6th Cir. 2021) ("Had Ward claimed, for example, that NPAS, Inc. improperly shared personal information with a third party, … then Ward's alleged harm would more closely resemble an invasion of privacy."). Thus, as with other statutes addressing harms traditionally recognized by the common law or in tort, the PPPA codifies the common law tort of invasion of privacy in the context of personal reading material and video rental information.

Indeed, as courts have recognized, the PPPA provides a statutory claim for redress of a personal injury—invasion of personal privacy—that traditionally sounds in common law tort. *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 640-41 (E.D. Mich. 2017) ("[T]he right guaranteed by the PPPA is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century . . ."); *Lin v. Crain Comm'ns, Inc.*, No. 19-118990, 2020 U.S. Dist. LEXIS 7442, at *4 (E.D. Mich. Jan. 16, 2020) (the PPPA "aims to preserve personal privacy"); *Boelter v. Advance Mag. Publishers, Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) ("[T]he harms contemplated by [the PPPA and the federal VPPA] have close ties to those recognized by the common law tort of invasion of privacy"); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (a

subscriber's "right to privacy in their personal-reading information is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts.'") (citation omitted); *Halaburda v. Bauer Pub. Co.*, No. 12-cv-12831, 2013 U.S. Dist. LEXIS 109954, at *17 (E.D. Mich. Aug. 5, 2013) (the PPPA "was created by [the Michigan] legislature to protect individual consumers from certain disclosures of their personal information").

Consistent with this, courts have consistently referred to PPPA claims as those challenging an invasion of privacy. *Coulter-Owens* v. *Time Inc*., 695 F. App'x 117, 119 (6th Cir. 2017) (describing plaintiff's claim for a violation of the PPPA as "an invasion of privacy"); *Moeller*, 235 F. Supp. 3d at 873 (PPPA violations are "invasion[s] of plaintiffs' privacy"); *Lin*, 2020 U.S. Dist. LEXIS 7442, at *4 (the PPPA "addresses many concerns related to an 'unwarranted invasion of privacy.'"); *Halaburda*, 2013 U.S. Dist. LEXIS 109954, at *17.

Unsurprisingly, Plaintiffs' Amended Complaint repeatedly frames their claim as one involving an invasion of privacy. It asserts that "Michigan's legislature enacted the PPPA to protect 'privacy' . . . by prohibiting companies from disclosing certain types of sensitive consumer information." (Am. Compl. ¶ 17.) It states that "Michigan's protection of reading information reflects" that the "process of intellectual growth is one of privacy[.]" (*Id.* ¶ 19.) It also states that "Michigan's passage of the PPPA . . . established as a matter of law 'that a person's choice in

reading, music, and video entertainment is a private matter[.]'" (*Id.* ¶ 22.)  And it concludes by asserting that "Plaintiff and the members of the Class have suffered invasions of their statutorily protected right to privacy." (*Id.* ¶ 75.)

This is fatal.  As set forth above, actions seeking redress for an "injury to a person" are subject to a three-year statute of limitations.  Courts look beyond the label of a claim to determine whether the action involves an "injury to a person." When the "nature" and "origin" of the claim seeks to vindicate an interest that has been traditionally recognized in tort, Michigan courts find that the claim is one for "injury to a person."  Here, the underlying nature of the PPPA claim is indisputably one to protect against the invasion of an individual's privacy.  And time and again, Michigan courts have recognized that purported invasions of privacy are personal injuries and are subject to Mich. Comp. Laws § 600.5805(2)'s three-year statute of limitations.  This Court should therefore find that the three-year limitations period applies, and dismiss Plaintiffs' Amended Complaint as time-barred.

## C.     Plaintiffs' Reliance On Mich. Comp. Laws § 600.5813 Is Misplaced.

Arguing for a six-year limitations period, Plaintiffs' Amended Complaint points to Mich. Comp. Laws § 600.5813.  (Am. Compl. ¶ 1 n.1.)  That provision is a catch-all that applies to "[a]ll other personal actions" when no "different period is stated in the statutes."  *Id.*  But as discussed above, here, a different limitations period *does* apply.  Plaintiffs' PPPA claim is already addressed by § 600.5805(2) because

21

it is a claim for "injury to a person." Thus, there is no need to look to the catch-all provision: "Section 5805 is a more specific statute of limitations than § 5813 and therefore controls if applicable[.]" *Local 1064*, 535 N.W.2d at 189-190.

### D. The Opinions Applying a Six-Year Limitations Period are Erroneous.

Finally, and as set forth above in footnote 6, Hoffman acknowledges that the district courts in *Pratt*, *Hall*, and *Krassick* have found that a six-year limitations period applies to PPPA claims. Those opinions are not binding, and Hoffman respectfully asserts that this Court should not find them persuasive, either.

*Pratt* was the first opinion to address the issue, and relied almost entirely on *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), as creating a hard-and-fast rule that all statutory actions that do not define a limitations period are subject to the six-year period. *Pratt*, 2022 U.S. Dist. LEXIS 27591, at *12 (citing *Palmer Park* as "published Sixth Circuit precedent" that is "controlling authority for this Court"); *id.* at *15-16 ("That published Sixth Circuit precedent controls this Court"). Likewise, in *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811 (E.D. Mich.), the Eastern District issued an oral ruling that applied the same analysis as in *Pratt*. (ECF No. 32-2.). *Krassick*, too, rested largely on *Palmer Park*. 2022 U.S. Dist. LEXIS 103417, at *12-14.

But *Palmer Park* made no such holding. That case involved a statutory claim for "penalty interest" owed under an insurance policy. 878 F.3d at 533. The

22

insurance policy provided for a two-year limitations period, and the claim was brought four years after the loss accrued. The Sixth Circuit, therefore, had to "consider . . . whether the penalty-interest claim is one arising 'under' the Policy" and subject to a two-year statute of limitations, *id.* at 534, or whether "the catch-all, six-year period of limitations set forth in § 600.5813 of the Michigan Compiled Laws should apply," *id.* at 539. In doing so, the Court never addressed Mich. Comp. Laws § 600.5805(2)'s "injury to a person" standard or its interplay with Mich. Comp. Laws § 600.5813 in any detail. Nor did it hold that statutory claims protecting against an injury to a person were subject to a six-year limitations period. It simply answered the question before it, and found that a claim for penalty interest was subject to the six-year limitations period.

In dicta, *Palmer Park* stated that the "Michigan Court of Appeals [has] held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines." *Id.* at 540. And it cited *DiPonio Construction Co. v. Rosati Masonry Co.*, 631 N.W.2d 59 (Mich. Ct. App. 2001), as "contrast[ing] actions for statutory violations with actions to redress injuries resulting from traditional torts, noting that the limitations period set out in § 600.5805 apply to the latter." *Palmer Park*, 878 F.3d at 540. But in that context, that statement makes sense. When—as in *Palmer Park* and *DiPonio*—the statutory action does not involve an injury to a person, the six-year limitations period would

23

apply.  But the catch-all limitations period under § 600.5813 only applies when other more specific periods are inapplicable.  Because § 5805 *is applicable* here, that statute applies.  *Local 1064*, 535 N.W.2d at 189-90 ("Section 5805 is a more specific statute of limitations than § 5813 and therefore controls if applicable . . .").

*DiPonio* involved a similar analysis.  There, a subcontractor was owed over $40,000 for labor and materials and sued to recover those monetary damages under Michigan's Builders' Trust Fund Act.  631 N.W.2d at 61.  That claim was purely statutory, and the underlying nature of the claim lacked any resemblance to harms traditionally recognized as involving an "injury to a person" under the common law. *Id.* at 65 ("The present case does not involve an injury to person or property within the meaning of § 5805(7).").  Again, the Court concluded that "a civil cause of action arising from a statutory violation is subject to the six-year limitation period found in § 5813, if the statute itself does not provide a limitation period." *Id.* at 66.  But again, the court was not faced with a statutory action involving an injury to a person and, therefore was not faced with a situation where "a more specific statute of limitations" would apply.

Thus, the application of the six-year limitations period to these cases is not surprising.  An "injury to a person" is an injury "resulting from invasions of rights that inhere in man as a rational being . . . rights to which one is entitled by reason of being a person in the eyes of the law." *Stringer*, 233 N.W.2d at 700.  The underlying

24

nature of the claims in these cases do not involve "rights that inhere in man as a rational being." With no "injury to a person," there would be no need to apply the more specific limitations period. *Local 1064*, 535 N.W.2d at 189-90 ("Section 5805 is a more specific statute of limitations than § 5813 and therefore controls if applicable . . .").[8]

## CONCLUSION

For the reasons explained above, Hoffman respectfully requests that Plaintiffs' Amended Complaint be dismissed for lack of standing or, alternatively, as untimely, and that judgment enter in Hoffman's favor.

Date:  October 7, 2022                    Respectfully submitted,

By:*/s/ Theodore W. Seitz*
      Lisa A. Brown (P67208)
      Theodore W. Seitz (P60320)
      Kyle M. Asher (P80359)
      DYKEMA GOSSETT PLLC
      400 Renaissance Center
      Detroit, MI 48243
      (313) 568-6800
      lbrown@dykema.com

      *Attorneys for Hoffman Media, LLC*

---

[8] Even if the Court were to apply a six-year period, McGlade is the only named Plaintiff whose claims were filed before July 31, 2022. Thus, Hoemke and Keaner's claims—filed more than six-years after July 31, 2016, would still be time-barred.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Theodore W. Seitz*
*Attorney for Hoffman Media, LLC*

123686.000001 4869-5142-0470.2

26